56 A.3d 349

**Khana SOLEIMANZADEH, et al.**

**v.**

**MONTGOMERY COUNTY, Maryland.**

**No. 1433, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Nov. 26, 2012.

108

Jeffrey S. Larson, Greenbelt, MD, for Appellant.

Robert J. Birenbaum (Marc P. Hansen, Co. Atty., Edward B. Lattner, Chief, Eric C. Willis, on the brief), Rockville, MD, for Appellee.

Panel: WOODWARD, WATTS and J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

WOODWARD, J.

The instant appeal arises from a condemnation action brought by appellee, Montgomery County, Maryland ("the County"), to take a portion of the real property owned by appellants, Khana and Joseph Soleimanzadeh ("the Soleimanzadehs"). Following the Soleimanzadehs' failure to comply with certain discovery requests, the Circuit Court for Montgomery County imposed sanctions prohibiting them from introducing any evidence in support of their claim for just compensation and damages ("just compensation").[1] On May 3, 2010, the County filed a motion for summary judgment as to the issue of just compensation, reasoning that the Soleimanzadehs' inability to introduce any evidence in support of their claim on this issue resulted in a lack of any genuine dispute of material fact. The Soleimanzadehs filed an opposition to this

---

1. "Where only a portion of the property is taken, the owner is entitled to an award of just compensation for what is actually taken plus the value of any consequential damages to the remaining property." Maryland Civil Pattern Jury Instruction 13:5. *See* Md.Code Ann., Real Prop. § 12–104(b) (1974, 2010 Repl.Vol.). To facilitate our discussion in this opinion, we shall use the term "just compensation" to include both the value of the property taken and consequential damages to the remaining property.

motion on May 14, 2010. Following a motions hearing on July 19, 2010, the court granted the County's motion for summary judgment. On July 21, 2010, the court entered a judgment in favor of the County that determined the just compensation due to the Soleimanzadehs to be $35,000, which was based solely on the County's appraisal of the property subject to condemnation.

On appeal, the Soleimanzadehs present three questions for our review, which we have slightly re-phrased:

I. Did the trial court err in denying the Soleimanzadehs a jury trial on the issue of just compensation in a condemnation proceeding?

II. Was it improper for the trial court to grant judgment without any testimony as to damages?

III. Did the Soleimanzadehs have a right to cross-examine the witnesses of the County as to compensation?

For the reasons set forth herein, we answer the first question in the affirmative and therefore reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion. In light of our decision, we need not address the remaining questions presented.

## BACKGROUND

On April 10, 2009, the County filed a Complaint for Condemnation in the circuit court seeking to acquire 975 square feet in fee simple and 1,300 square feet of revertible slope easement from the real property owned by the Soleimanzadehs and located at 13923 Travilah Road, Rockville, Maryland, in furtherance of the County's Travilah Road improvement project.[2] After filing an amended complaint on September 10,

---

2. The County had actually taken this property on May 15, 2007, pursuant to an Advance Take action authorized by Section 49–50 of the Montgomery County Code and Art. III, § 40A of the Maryland Constitution. On that date the County deposited $38,353 with the Clerk of the Circuit Court for Montgomery County. The parties, however, were unable to agree upon the price to be paid for the property, and the

2009, the County served the Soleimanzadehs on October 5, 2009, with interrogatories and requests for production of documents, and the Soleimanzadehs' responses were due on November 7, 2009. *See* Md. Rule 2–421(b), 2–422(c). On November 6, 2009, counsel for the Soleimanzadehs sent a letter to the County notifying the County that the interrogatories and requests for production of documents were misplaced and were discovered on November 5, 2009. Counsel for the Soleimanzadehs asked for a 45–day extension within which to comply with discovery, and the County had no objection to the request. On December 14, 2009, however, counsel for the Soleimanzadehs advised the County that they "would not file any responses to the discovery requests served by the County," and that the County "should go to the Court."

On December 23, 2009, after the expiration of the 45–day extension, the County filed a Motion to Compel and/or for Sanctions. The Soleimanzadehs filed no opposition to this motion. On January 19, 2010, the circuit court granted the County's motion and entered an order on January 21, 2010, directing the Soleimanzadehs to provide the requested discovery to the County within 10 days of the entry of the order. The order also provided that, if the Soleimanzadehs failed to produce the requested discovery within said 10 days, the Soleimanzadehs would be precluded from introducing "any evidence in support of their claims for just compensation and damages." The Soleimanzadehs did not produce any interrogatory responses or documents within 10 days of the entry of the order, and accordingly, the aforesaid sanctions were imposed.[3]

While the County's Motion to Compel and/or for Sanctions was pending, the County filed a Motion for Partial Summary Judgment on January 15, 2010. The County sought summary judgment with respect to the following issues: (1) the public

---

County thus began the instant proceedings to acquire the property by condemnation. *See* Mont. County Code, § 49–50(d).

**3.** On appeal, the Soleimanzadehs do not challenge the sanctions imposed for their failure to provide the requested discovery.

purpose and necessity of the taking of the property, (2) the amount of area taken by the County, and (3) the County's right to condemn the Soleimanzadehs' property and the legality of the condemnation proceeding. The County did not move for summary judgment on the issue of just compensation, requesting instead that "the Court submit the issue of just compensation to be awarded to the [Soleimanzadehs] for the property rights taken to the jury." On February 25, 2010, the trial court granted the County's motion for partial summary judgment.[4]

As a result of the imposition of sanctions on the Soleimanzadehs, the County filed on May 3, 2010, a Motion for Summary Judgment or in the Alternative Judgment by Default, seeking judgment on the issue of just compensation. In its motion, the County argued that the circuit court should grant summary judgment because the Soleimanzadehs "waived their right to an adversarial proceeding to contest the County's claims," and thus, "because of the sanctions imposed, there is no longer a controversy between the parties that presents a genuine dispute of material fact." The Soleimanzadehs filed an opposition to this motion and asserted therein that "[t]he issue of just compensation in this case is disputed and cannot be determined, absent an agreement between the parties, by summary judgment or default."

On July 19, 2010, the circuit court held a motions hearing to consider, among other things, the County's motion for summary judgment. On the issue of just compensation, the court engaged in the following discussion with the Assistant County Attorney:

THE COURT: Why would [the issue of just compensation] not go to a jury?

[ASSISTANT COUNTY ATTORNEY]: It wouldn't go to a jury because there can no longer be and there is no ... genuine issue of material fact that's in dispute.

---

4. The Soleimanzadehs did not file their opposition to the County's Motion for Partial Summary Judgment until February 25, 2010, the day that the court entered its order granting such motion.

THE COURT: What if the jury disbelieved your expert? It happens.

\* \* \*

THE COURT: ... [C]ouldn't the property owner generate ... an issue of material fact simply by getting on the witness stand and saying, "I think the property's worth X because," and then the because is, "you know, I've lived there 100 years." ... They can do that without an expert. Wouldn't that take it to a jury?

[ASSISTANT COUNTY ATTORNEY]: That's correct, but not in this case, Your Honor, because the sanctions preclude the defendant from taking the stand, because of the failures of discovery. So there is nothing to controvert—

\* \* \*

... [T]he sanctions really preclude the defendants from presenting or contesting our evidence. And the defendants, if they want to contest the evidence of value, have a burden of production to do so, and the defendants, because of the sanction, are precluded from doing so. There's a case that does state that, *Solko v. State Roads Commission,* 82 Md.App. 137, at pages 147 to 149 [570 A.2d 373].

\* \* \*

... I'll be candid with the Court that the issue of summary judgment of just compensation is certainly a new area. I can't really find anything directly on point....

\* \* \*

[*Solko* ], at pages 147 to 149 [570 A.2d 373], does state that the property owner has specific burdens of production if they wish to contest evidence of value. And since the property owners cannot meet that burden in this case, and are precluded from doing so, the County is entitled to summary judgment.

At the conclusion of the motions hearing, the trial court made the following ruling:

[T]he County has demonstrated under Maryland Rule 2–501(f) that there is no genuine dispute of material fact as to the value of the property, they have supported their motion by competent evidence, meaning an affidavit under oath on personal knowledge, that is, that the testimony would be otherwise admissible at trial, and that they have set forth an expert opinion as to value.

And there being no evidence to the contrary and the defendants not having fulfilled their burden as set forth in *Educational Testing v. Hildebrant,* nor filed an affidavit under Maryland Rule 2–501(d), for all the reasons I've said, the motion for summary judgment is granted and the value is established.

And, unfortunately, what that means, folks, is there won't be a trial.

Accordingly, the circuit court granted the County's motion for summary judgment and on July 21, 2010, entered a Judgment and Inquisition that vested title to the subject property in the County and ordered the disbursement to the Soleimanzadehs as just compensation the sum of $35,000, which was based exclusively on the County's appraisal of the subject property.

The Soleimanzadehs filed a Notice of Appeal with this Court on August 16, 2010. Additional facts will be set forth below as necessary to resolve the questions presented.

## *DISCUSSION*

### The Parties' Contentions

The Soleimanzadehs assert that condemnation actions are "special proceeding[s]," and "the trial of a condemnation case must satisfy the procedural requirements of Title 12, Chapter 200 of the Maryland Rules." The Soleimanzadehs argue that, in granting the County's motion for summary judgment, the trial court in the instant case violated the plain language and intent of Md. Rule 12–207. According to the Soleimanzadehs, Rule 12–207(a) requires that an action for condemnation be

tried by a jury unless all parties file a written election submitting the case to the court for determination. The Soleimanzadehs also argue that, because a condemnation is a special proceeding at law, the specific scheme set forth in Rule 12–201 *et seq.* "must be strictly followed" and "takes over the general procedures involving civil cases."

In addition, the Soleimanzadehs argue that a trial court may not rely on the general summary judgment rule "in derogation of the landowners' right to a jury trial as mandated by the Maryland Constitution," because "a rule of procedure is subordinate to the Maryland Constitution and must yield to it." Citing to *Bouton v. Potomac Edison Co.,* 288 Md. 305, 418 A.2d 1168 (1980), the Soleimanzadehs assert that "the Maryland Constitution requires that the issue of just compensation be determined by a jury."

Finally, the Soleimanzadehs argue that summary judgment is not appropriate because members of the jury in a condemnation case are given a view of the condemned property before hearing any other evidence. According to the Soleimanzadehs, the jury can "use its view of the property as real evidence and as a guide to determine how much weight to give to the testimony of experts and other witnesses[ ] when valuing the property in a condemnation action."

The County agrees with the Soleimanzadehs that condemnation actions are indeed "special proceedings," but argues that these actions remain civil proceedings, and thus the Maryland Rules of Civil Procedure continue to apply. In particular, the County cites to *Hammond v. State Rds. Comm'n,* 241 Md. 514, 517, 217 A.2d 258 (1966) for the proposition that the general rules of procedure are applicable to condemnation proceedings. The County also asserts that "Rule 12–206(a) makes clear that condemnation actions are subject to the discovery rules in civil proceedings, which would include sanctions for failures of discovery."

The County next contends that the Soleimanzadehs have given no reason "why condemnation proceedings should not be subject to the summary judgment rule when the right to a

jury trial has been extended to other civil matters by the Maryland Constitution, but are still subject to summary judgment." In other words, according to the County, "summary judgment does not impair the right to [a] jury trial but determines simply what if any issues are to be tried." The County concludes that Rule 12–207(a) is "a rule of administration, designed to facilitate assignment procedure ... by presumptively assigning condemnation cases to the jury trial track."

Finally, the County argues that summary judgment was appropriate because the Soleimanzadehs could not meet the burden required of defendants in a condemnation proceeding as a direct result of the Soleimanzadehs' discovery violations. The County asserts that landowners bear the burden of producing evidence of the value of their property if they disagree with the County's evidence of value. Because of the discovery sanctions, the County concludes that the Soleimanzadehs were unable to meet the required burden of producing evidence of the value of their property, which is necessary to raise a genuine dispute as to the value of the property.

## Standard of Review

This Court in *Warsham v. Muscatello, Inc.*, 189 Md.App. 620, 985 A.2d 156 (2009) recently set forth the requirements of, and standard of review for, granting a motion for summary judgment:

Maryland Rule 2–501 governs summary judgment. Summary judgment is appropriate where there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law. In deciding whether summary judgment is appropriate, the court must determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. A material fact is a fact that, depending on how it is decided by the trier of fact, will affect the outcome of the case.

The party opposing a motion for summary judgment must show disputed material facts with precision in order to

prevent the entry of summary judgment. Put another way, summary judgment is not defeated by bare allegations or a mere scintilla of evidence.

In determining whether the trial court correctly entered summary judgment as a matter of law, we apply a *de novo* standard of review. Like the trial court, we must make the threshold determination as to whether a genuine dispute of material fact exists. If we are satisfied that there was no genuine issue of material fact, then we must determine if the trial court reached the correct legal result. We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the facts against the moving party.

*Id.* at 634–35, 985 A.2d 156 (internal citations and quotations omitted).

## Analysis

 In its brief, the County refers frequently to the lack of a genuine dispute of material fact, which allowed the trial court to grant a motion for summary judgment. Specifically, the County asserts that summary judgment was appropriate in the instant case, because as a result of the imposition of discovery sanctions, the Soleimanzadehs "failed to raise a genuine issue of material fact in dispute with specificity regarding the only evidence that was before the Court (the County's appraisal)." Summary judgment, however, is only appropriate "where there is no genuine dispute as to any material fact *and* the party in whose favor judgment is entered is entitled to judgment *as a matter of law.*" *Warsham,* 189 Md.App. at 634, 985 A.2d 156 (emphasis added) (internal quotations omitted). Our review of the record indicates that the trial court did not err in ruling that there was no genuine dispute as to a material fact raised by the Soleimanzadehs regarding the valuation of the property subject to condemnation. Thus, the instant case turns on whether the County is entitled to judgment *as a matter of law.*

## I.

### Maryland Condemnation Law

We begin our inquiry with a brief history of condemnation law in Maryland, with a particular emphasis on the right to a jury trial. In *Bouton v. Potomac Edison Co.*, 288 Md. 305, 418 A.2d 1168 (1980), the Court of Appeals discussed the history of condemnation law and the development of the right to a jury trial:

Condemnation proceedings were not ordinary suits at law. Rather, they were special proceedings, lacking the characteristics of ordinary trials, brought pursuant to the power of eminent domain, a power derived from the sovereignty of the state. It was often the practice to refer questions of damages to a commission of viewers or appraisers, usually three or five in number. Even where it was the customary practice to submit the issue to the jury, that jury was not the common law jury of twelve presided over by a judge, but was a jury of varying number depending on the jurisdiction, and was presided over by the sheriff. Maryland apparently was among those states which, early in its history, provided for a sheriff's jury to fix damages for the taking of land for certain purposes. For these reasons **Article 23 of the Maryland Declaration of Rights which preserves the common law right to a jury trial in civil proceedings does not include condemnation cases which are special proceedings. Thus, absent specific constitutional or statutory provisions mandating a jury trial, the issues in a condemnation case should be tried by the Court.**

*Id.* at 309, 418 A.2d 1168 (emphasis added) (citations omitted).

Article III § 40 of the Maryland Constitution is the specific constitutional provision that mandates a jury trial on the issue of just compensation in condemnation cases:

The General Assembly shall enact no Law authorizing private property, to be taken for public use, **without just compensation, as agreed upon between the parties, or**

**awarded by a Jury,** being first paid or tendered to the party entitled to such compensation.[5]

(Emphasis added). The above provision "appeared for the first time in the Constitution of 1851 (Article 3, section 46), and was thereafter inserted in the succeeding Constitutions of 1864 (Article 3, section 39) and 1867." *Patterson v. Mayor & City Council of Baltimore,* 127 Md. 233, 239, 96 A. 458 (1915).

In *Baltimore Belt R.R. Co. v. Baltzell,* 75 Md. 94, 98, 23 A. 74 (1891), a landowner challenged a condemnation proceeding brought by a railroad company pursuant to section 167 of Article 23 of the Maryland Code. By section 167, the Legislature accorded the railroad company the power to condemn any land that may be needed for the proper construction of its road. *Id.* Section 167 provided that compensation to be paid to the owner of the property condemned shall be assessed by a special jury summoned on a sheriff's warrant. *Id.* Specifically,

application may be made by the company to a justice of the peace, who shall thereupon issue his warrant to the sheriff of the county, requiring him to summon a jury of twenty, qualified to act as jurors under the laws of the State, to meet on the premises on a day named in said warrant, and from the panel thus selected, the company and the owner, may each strike off four persons, and the remaining twelve shall act as "the jury of the inquest of damages."

*Id.*

One of the issues raised by the landowner in *Baltzell* was whether, under Article III, § 40 of the Constitution, the Legislature had the power "to provide that the compensation

---

**5.** Art. III Sections 40A, 40B, and 40C of the Maryland Constitution provide exceptions to this requirement. In Baltimore City and Baltimore, Cecil, and Montgomery Counties, the value of the property may be set by appraisers and the property may be immediately taken upon payment to the owner(s) of the property or into the court. Md. Const. art. III, § 40A. There is also a similar exception for the State Roads Commission for the immediate taking of property for highway purposes and for the Washington Suburban Sanitary Commission for the immediate taking of property in Prince George's County. Md. Const. art. III, § 40B, C. Under all three exceptions, however, the owner must be paid any further sum subsequently awarded by a jury.

to be paid to the owner [ ] be assessed by a special jury summoned upon warrant," as opposed to a common law jury in a regular trial in court. *Id.* at 106, 23 A. 74. The Court analyzed the issue as follows:

> Ordinarily, it is true, the term "jury" used in a Constitution or a statute will be understood as meaning a common law jury. . . . But it is conceded from the earliest colonial history, and from the formation of the State Government down to the adoption of the Constitution, the Legislature had provided for the taking of private property for public use, upon making compensation to the owner, as assessed by a special jury summoned on warrant . . . . **[W]hen the Constitution says where property is taken for public use the owner shall be entitled to compensation awarded by a jury, why shall it be held to mean compensation awarded exclusively by a common law jury in a regular court trial?** The only question before a jury in such cases is the question of compensation, and a jury summoned by warrant to meet on the premises in view and with the opportunity of seeing the property, ought to be quite as competent to decide that question, to say the least, as a common law jury sitting in a common law court. And, besides, in two-thirds of the counties of this State, there are but two jury terms a year, each about 6 months apart, and we can hardly suppose the framers of the Constitution meant to delay and embarrass the construction of railroads and other public improvements, by requiring compensation to be awarded in court by a common law jury. At least, if such had been the intention, if they intended to deny to the Legislature the exercise of a power in this respect,—a power which had been exercised from the beginning of the Government,—it is but fair to presume this intention would have been declared in plain and explicit terms. **What they did mean, was to provide in the first place that the owner should have the right or privilege of a jury of twelve men in determining what compensation was to be paid, and in the next, that he should not be deprived of his property till such compensation had been paid. And such has been the uniform**

**construction of this clause of the Constitution from the time of its adoption till the present.**

*Id.* at 107–08, 23 A. 74 (bold emphasis added).

The Court of Appeals concluded that, "[w]hile the Constitution declares that the compensation shall be assessed by a jury, it at the same time leaves to the Legislature to provide whether such assessment shall be made by a common law jury or by a jury summoned by warrant, as may be most expedient and proper." *Id.* at 108, 23 A. 74.

In 1912, the General Assembly added Article 33A, "Eminent Domain—Regulating the Procedure for the Acquisition of Property for Public Use by Condemnation," and provided in the introductory purpose section that "the proceedings therefor shall be before a jury in court instead of before a sheriff's jury." 1912 Md. Laws, Chap. 118, at 236. This act, along with the purpose section, was repealed and re-enacted with amendments in 1914. 1914 Md. Laws, Chap. 463.

The 1914 act set forth the specific procedures governing a trial of condemnation action, which "shall be heard before a jury." *Id.* at 751. Specifically, on the date fixed by the court for the trial, a jury is selected and sworn "to justly and impartially value the damages which the defendant owner or owners will sustain by the taking, use and occupation of the property." *Id.* at 752. Under the act, the court then directs the sheriff to take the jury on the subject property "to view the same in the usual way in condemnation cases." *Id.* After the view and the jury has returned to the court,

> the trial of the issues of law and fact in the case, relative to the right to condemn said land, and the damages which will be occasioned to the defendant owner or owners thereof by the taking, use and occupation thereof by the petitioner, and the amount of just compensation therefor to each defendant, and of all other issues which may properly arise in said case, shall be proceeded with before said Court and jury in the same manner and under the same rules of law and practice, pertaining to the admissibility of evidence, the instructions of the Court, and all other matters arising under said

proceedings, as in other civil cases, except as herein otherwise provided.

*Id.*

In addition, if the jury's verdict was excepted to in a timely manner and the court set aside the jury's verdict, the court was directed to "proceed with the selection of a jury as aforesaid, and a new trial of the case, in all respects as hereinbefore provided, and so on until a final verdict in said case is obtained." *Id.* at 753. Finally, the procedure for appeal from any final judgment of the lower court referred to the defendant "appealing[ ] the amount of the compensation, damages and costs so *awarded by said jury.*" *Id.* at 755 (emphasis added).

Between 1914 and 1963, several minor revisions were made to Article 33A, but the Code remained "basically unchanged." George W. Baker, Jr. & Philip Z. Altfeld, *Maryland's New Condemnation Code*, 23 MD. L.REV. 309, 310 (1963). On September 15, 1961, the Court of Appeals substantially completed the codification in rule form of all Maryland procedural law by adopting the Twentieth Report of the Standing Committee on Rules ("Rules Committee"). Md. R. Comm. Rep. No. 20, at 5 (1961).[6] In that report, the Rules Committee recommended, among other things, the incorporation of the Special Proceedings rules, located in Chapters 1100, 1200, and 1300 of the Maryland Rules, into one chapter, Chapter 1100, and assigned a separate subtitle to each special proceeding. *See id.* at 4. In particular, Subtitle U set forth the rules pertaining to eminent domain and was "intended to provide a uniform procedure for the condemnation of property and to that extent supersedes all such procedures provided for in statutes," expressly including Article 33A. *Id.* at 130. The Rules Committee recognized the need for "drafting an Act or a series of Acts for presentation to the General Assembly in order to repeal the sections of the Code which are superseded by the rules now submitted." *Id.* at 5.

---

6. The rules adopted from the Twentieth Report became effective January 1, 1962.

Although Subtitle U did not contain a separate rule for a trial by jury, the rules under that subtitle clearly presumed the existence of a jury trial. For example, Rule U7 entitled "Trial" set forth the procedures for the selection of the jury and the oath taken by jurors to "value justly and impartially the damages" sustained as a result of the taking of the property and to the remainder thereof, if any, and Rule U8 described the procedure for the view of the subject property by the jury.

On November 14, 1962, the Committee to Revise the Condemnation Laws of Maryland, appointed by the Legislative Council of the General Assembly ("the Legislative Council Committee"), issued a report recommending a complete revision of the substantive law of condemnation under Article 33A, as well as the procedural law contained in Subtitle U of the Maryland Rules. Report of the Legislative Council Committee to Revise the Condemnation Laws of Maryland 282 (1962) ("Legislative Council Report"). The bill as originally drafted by the Legislative Council Committee contained both the revisions to the substantive law and to Subtitle U of the Rules. *Id.* The Legislative Council Committee took the position that "the condemnation laws are a unique and special procedure which warrants the placing of the entire revision in the statutes." *Id.* At the request of the Rules Committee, however, the Legislative Council Committee decided "to defer to the wishes of the Rules Committee and to place the procedural matter in the Rules." *Id.* Consequently, the procedural sections of the proposed bill were "submitted to the Rules Committee to be considered for adoption by the Court of Appeals in lieu of present Rule U." *Id.*

In its report, the Legislative Council Committee also summarized the procedure for condemnation under the power of eminent domain:

The Maryland Constitution, which prohibits the taking of private property for public use without just compensation, further provides that such compensation must be agreed upon between the parties or awarded by a jury (Constitution, Art. III, Sec.40). **This is a judicial procedure for**

condemnation, requiring a condemning authority to institute suit in which, upon the passage of an award by the jury, the title to the condemned property passes to the condemnor permitting him to take possession.

*Id.* (emphasis added).

The Legislative Council Committee's proposed revisions to the substantive law contained in Article 33A were enacted into law by Chapter 52 of the Laws of 1963, effective June 1, 1963. 1963 Md. Laws, Chap. 52. Section 1 of Article 33A mandated that "[a]ll proceedings for the acquisition of private property for public use by condemnation shall be governed by the provisions of [Article 33A] and of Subtitle U of the Maryland Rules of Procedure." *Id.* at 80.

Following this revision of Article 33A, the Rules Committee proceeded to redraft Subtitle U in substantially the same form as recommended by the Legislative Council Committee.[7] Editor's Note, Subtitle U, at 444 (1963). The Court of Appeals adopted the Rules Committee's proposed revisions to Subtitle U effective June 1, 1963. The Editor's Note to Subtitle U stated, in relevant part, that the revision of Subtitle U was "originally part of the bill ... prepared by the Legislative Council [Committee] to revise both the substantive and procedural law on eminent domain. At the request of the Rules Committee, the procedural portion of the bill was referred to

---

7. The Legislative Council Committee's proposed Rule U15 read as follows:

Rule U 15. *Trial—Method—No Removal.*

(a) *In General.* Every issue of fact in a proceeding for condemnation shall be tried by jury unless all parties having an interest in the determination of such issue elect trial by the court without the aid of a jury as hereinafter provided.

(b) *Election of Trial by the Court.* If all of the parties concerned file a writing submitting the case, or any issue of fact therein, to the court for determination without the aid of a jury, the court shall proceed to determine the matter so submitted without the aid of a jury.

(c) *No Right of Removal.* The right of removal granted by Article IV, Section 8 of the Constitution of Maryland does not apply to proceedings for condemnation.

Legislative Council Report at 296–97.

the Rules Committee for adoption in the form of rules, rather than statutory law." *Id.*

As revised in 1963, Rule U15 read as follows:

**Rule U15. Trial—Method—No Removal.**

 a. *In General.*

**A proceeding for condemnation shall be tried by a jury unless all parties elect trial by the court without a jury as hereinafter provided.**

 b. *Election of Trial by the Court.*

If all of the parties concerned file a writing submitting the case, or any issue of fact therein, to the court for determination without a jury, the court shall determine the matter so submitted without a jury. In the case of a defendant under disability, in gestation, not in being or unknown such election may be made for him by his guardian, guardian *ad litem* or committee.

 c. *No Right of Removal.*

The right of removal granted by Article IV Section 8 of the Constitution of Maryland does not apply to proceedings for condemnation.

(Emphasis added).

Throughout the above history of the revisions, recodifications, and stylistic changes to Article 33A and Subtitle U, the requirement that a jury award just compensation in a condemnation proceeding endured. Indeed,

> Md. Rule U15 was not meant to change the settled law [of Article III Section 40 of the Constitution], even assuming that it could.... **In other words, the Rule is intended to implement Art. III, § 40, which provides for a jury on the issue of the quantum of compensation due.**

*Bouton,* 288 Md. at 310, 418 A.2d 1168 (emphasis added).

Condemnation proceedings in Maryland are governed now by Maryland Rules 12–201, *et seq.* These rules were derived from Subtitle U of Chapter 1100 Special Proceedings. In particular, the trial by jury provision found in Rule 12–207(a)

was derived specifically from Rule U15a. *See* Source note, Md. Rule 12–207. Rule 12–207(a) reads:

**Rule 12–207. Trial.**

(a) **Trial by jury unless otherwise elected.** An action for condemnation *shall be tried by a jury* unless all parties file a written election submitting the case to the court for determination. All parties may file a written election submitting an issue of fact to the court for determination without submitting the whole action.

(Italics added).

The *Baltzell* Court summarized the right to a jury trial in condemnation proceedings, as follows:

[T]he Constitution declares "that the General Assembly shall enact no law authorizing private property to be taken for public use without just compensation as agreed upon between the parties or awarded by a jury, being first paid or tendered to the party entitled to such compensation." Art. 3, sec. 40. **It is the compensation to be awarded by a jury. The jury is the tribunal, and the sole tribunal, by whom the amount of compensation is to be determined,** and, this being so, it would seem but fair and reasonable that the owner should have the opportunity of submitting to the jury such evidence as he might deem proper in regard to the value of his property.

75 Md. at 105, 23 A. 74 (emphasis added).

## II.

### The Right to a Jury Trial in Civil Proceedings

The County seeks to classify condemnation proceedings as normal civil proceedings, and thus the County argues that the rules of civil procedure, including summary judgment, apply. The County points to Article 23 of the Maryland Declaration of Rights, which preserves the common law right of trial by jury in civil proceedings, and argues that "[t]here is no doubt that civil actions in tort and contract are subject to the summary judgment rule." We disagree and shall explain.

**1.**

The County first seeks to draw an analogy between Article 23 of the Declaration of Rights and Article III § 40 of the Constitution. Article 23 states that "[t]he right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of $15,000, shall be inviolably preserved." *See also* Md. Rule 2–511(a) ("The right of trial by jury as guaranteed by the Maryland Constitution and the Maryland Declaration of Rights or as provided by law shall be preserved to the parties inviolate.").

■ "[T]he right to a jury trial may be subjected to reasonable regulation," including rules requiring an affirmative written election for a jury trial. *Houston v. Lloyd's Consumer Acceptance Corp.*, 241 Md. 10, 14, 215 A.2d 192 (1965).[8] In

---

**8.** Citing for support to *Houston v. Lloyd's Consumer Acceptance Corp.*, 241 Md. 10, 215 A.2d 192 (1965) and *Md. Community Developers, Inc. v. State Rds. Comm'n of Md.*, 261 Md. 205, 274 A.2d 641 (1971), the County seeks to extend the "reasonable regulation" concept to argue that Rule 12–207(a) is "simply a rule of administration," which "does not remove condemnation proceedings from the summary judgment rule or the Maryland Rules of Civil Procedure." The County's reliance on these cases is misplaced.

In *Houston*, the Court of Appeals held that a local rule requiring the timely, affirmative, written election of a jury trial was a "reasonable regulation" on the general right to a jury trial in a civil proceeding. In *Md. Community Developers, Inc.*, the Court of Appeals held that a landowner did not have a guaranteed right to a trial by a *court* in a condemnation proceeding; instead, a landowner has a guaranteed right of trial by *jury*. 261 Md. at 214, 274 A.2d 641. The landowner argued that the difference between Md. Rule 343 (now located at Md. Rule 2–325), which allowed the election of a jury trial, and former Rule U15, which required a jury trial, was "unreasonable, arbitrary, and capricious." *Id.* at 211, 274 A.2d 641. The Court concluded that the requirement that parties in a condemnation proceeding elect a trial *by court* was akin to the general civil proceeding rule that parties were required to elect a trial *by jury*—both were reasonable regulations. *Id.* at 213–14, 274 A.2d 641.

These cases do not stand for the proposition that, as a "reasonable regulation," a rule of procedure may be applied to eliminate the award of just compensation by a jury. Rather, they serve to highlight the distinction between the right of trial by jury in a civil proceeding and

particular, Rule 2–325 requires a timely, written election of a jury trial or a trial by jury is waived. Rule 2–325 states, in pertinent part:

> (a) **Demand.** Any party may *elect a trial by jury of any issue triable of right by a jury* by filing a demand therefor in writing either as a separate paper or separately titled at the conclusion of a pleading and immediately preceding any required certificate of service.

> (b) **Waiver.** The *failure of a party to file the demand* within 15 days after service of the last pleading filed by any party directed to the issue *constitutes a waiver of trial by jury.*

> &ast; &ast; &ast;

> (e) **Effect of election.** When trial by jury has been elected by any party, the action, including all claims whether asserted by way of counterclaim, cross-claim or third-party claim, as to all parties, and as to *all issues triable of right by a jury, shall be designated upon the docket as a jury trial.*

(Italics added).

By contrast, Article III § 40 of the Constitution does not "preserve" the right to a jury trial in condemnation proceedings; it expressly prohibits the General Assembly from enacting laws authorizing the taking of property for public use without just compensation awarded by a jury. Rule 12–207(a) also does not reference a "right to elect" a jury trial, but instead mandates that all actions for condemnation "*shall* be tried by a jury," unless a court trial is elected by all parties.[9] (Emphasis added).

---

the constitutional right of a landowner to have just compensation determined by a jury in a condemnation proceeding.

**9.** The usage of the word "shall" is of particular importance, because the word "shall" in a rule means that the conduct prescribed is mandatory. *See Tranen v. Aziz*, 59 Md.App. 528, 534, 476 A.2d 1170 (1984) (explaining that the term "shall" in a rule "is presumed mandatory ..., denoting an imperative obligation inconsistent with the exercise of discretion" (citation and quotations omitted)), *aff'd*, 304 Md. 605, 500 A.2d 636 (1985); *see also* Md. Rule 1–201(a).

John J. Ghingher, Jr. and John J. Ghingher, III discussed this distinction in *A Contemporary Appraisal of Condemnation in Maryland*, 30 Md. L.Rev. 301 (1970):

> A jury trial in a condemnation case is guaranteed by article III, section 40 of the Maryland Constitution, presumably for the purpose of ensuring that the "just compensation" contemplated by that section is in fact awarded to owners of condemned property. **As a result, a condemnation case is always tried before a jury unless all parties to the suit agree *in writing* to submit the case for determination without a jury—a practice which is exactly the opposite of that in the usual case at law, where a jury trial is awarded only if one of the parties so elects.** The upshot of this procedure for selecting the trier of fact is that **the property owner, who is the constitutionally protected party, must have his property valued by a jury** unless he can persuade the condemnor, the party from whom he is constitutionally protected, to agree to dispense with a jury.

*Id.* at 322–23 (bold emphasis added) (footnote omitted).

## 2.

■ The County next contends that, because condemnation proceedings are governed by the rules of civil procedure, the summary judgment rule, Rule 2–501, may be applied in the appropriate circumstances to preclude the award of just compensation by a jury. The County is correct that under Rule 1–101(b), the rules of civil procedure contained in Title 2 apply in general to condemnation proceedings. *See Hammond*, 241 Md. at 517, 217 A.2d 258. The County, however, overlooks the exception clause to Rule 1–101(b). Rule 1–101(b) states: "Title 2 applies to civil matters in the circuit courts, except for Juvenile Causes under Title 11 of these Rules and *except as otherwise specifically provided or necessarily implied.*" (emphasis added) *See Hammond*, 241 Md. at 517, 217 A.2d 258 (stating that "[t]he acquisition of property by condemnation is a special proceeding and as such, as are other special proceedings, is regulated, not only by the particular rules concerning

the specific proceeding involved, but also *by such of the general rules of procedure as may be applicable.*" (emphasis added)). The question raised then is whether Article III, § 40 and Rule 12–207(a) specifically provide for an exception to the summary judgment rule on the issue of a jury trial in condemnation proceedings.

As previously stated, Article 23 preserves the right to a jury trial on "all issues of fact," and Rule 2–325 places on the docket as a jury trial all cases where a proper election has been made as to "all issues triable of right by a jury." Md. Rule 2–325(e). The purpose of the summary judgment rule is not to impair this constitutional right of trial by jury, but to " 'determine what, if any, issues are to be tried by jury.' " *Frush v. Brooks*, 204 Md. 315, 323–24, 104 A.2d 624 (1954) (quoting *Fletcher v. Flournoy*, 198 Md. 53, 61, 81 A.2d 232 (1951)). Consequently, when a trial court determines, in a summary judgment proceeding, that there is no genuine dispute of a material fact, there is no "issue of fact" for a jury to decide.

On the other hand, Article III, § 40 of the Constitution provides that a jury shall award just compensation in condemnation actions, and Rule 12–207(a) mandates a jury trial unless all parties elect a court trial. In other words, "[t]he jury is the tribunal, and the sole tribunal, by whom the amount of compensation is to be determined," *Baltzell*, 75 Md. at 105, 23 A. 74, regardless of whether the landowner raises a genuine issue of material fact during the pretrial process. For this reason, even though the Soleimanzadehs did not put forth any affirmative evidence of the value of the property to raise a genuine dispute of material fact to contradict the County's appraisal, the County was not entitled to judgment as a matter of law, because the Constitution *requires* that just compensation be awarded by a jury, not by a court. Therefore, we conclude that the rules of civil procedure apply to condemnation proceedings, except for the summary judgment rule, Rule 2–501, where the application of such rule would preclude the award of just compensation by a jury.

The County relies on *Bryan v. State Rds. Comm'n*, 356 Md. 4, 736 A.2d 1057 (1999) in support of its argument that the summary judgment rule applies to condemnation actions. *Bryan*, however, is distinguishable from the case *sub judice*. In *Bryan*, the Court of Appeals held that landowners were not entitled to twelve person juries in condemnation proceedings, but rather only a six person jury, as provided in Article 5 of the Maryland Declaration of Rights for civil proceedings. *Id.* at 14–15, 736 A.2d 1057.

Unlike *Bryan*, the County in the instant case argues that the Soleimanzadehs are not entitled to *any* jury trial, because there is no genuine dispute of material fact as to the value of the property. The Court in *Bryan* did not sanction the denial of the right to a jury trial in a condemnation action through a rule of civil procedure; it applied an amendment to the Declaration of Rights to hold that the jury trial in a condemnation proceeding did not require *twelve* jurors. *Id.* Such holding is consistent with *Baltzell*, where, as discussed *supra*, the Court held that the constitutional right to a jury's determination of just compensation did not preclude the legislature from determining what type of jury would assess just compensation. 75 Md. at 108, 23 A. 74.

Moreover, the County's reliance on the *Bryan* Court's general proposition that the Court of Appeals has "consistently treated condemnation proccedings as civil actions at law" is not dispositive of this case. The list of cases cited in *Bryan* for this proposition do not indicate that a rule of procedure may deprive a property owner of his or her constitutional right to a jury trial in a condemnation proceeding. *See e.g.*, *State Rds. Comm'n v. Adams*, 238 Md. 371, 374 n. 1, 209 A.2d 247 (1965) ("The procedure governing entry of judgment absolute under Rule U21 appears identical with that governing other civil cases."); *D'Arago v. State Rds. Comm'n*, 228 Md. 490, 498, 180 A.2d 488 (1962) ("As in other civil cases, the instructions to the jury in a condemnation case must conform to the issues and the evidence"); *Bergeman v. State Rds. Comm'n*, 218 Md. 137, 142, 146 A.2d 48 (1958) ("[A] view is provided for before the taking of testimony under ... Art.

33A, sec. 7; but sec. 9 provides that thereafter the trial shall proceed as in other civil cases."); *Potomac Electric Power Co. v. Birkett,* 217 Md. 476, 482, 143 A.2d 485 (1958) ("Art. 33A, Sec. 4 . . . provides further that 'all demurrers, motions and other proceedings therein, except as otherwise herein provided, shall be disposed of in accordance with the rules and practice . . . now governing in the trial of other civil cases. . . ."); *Herzinger v. City of Baltimore,* 203 Md. 49, 54, 96 A.2d 3 (1953) (overruling a motion to dismiss the appeal and providing that "all questions properly raised below are open on this appeal, as in appeals in civil cases generally").

### 3.

▉▉▉▉ Finally, the sanctions imposed on the Soleimanzadehs for discovery violations that precluded the introduction of evidence in support of their claim for just compensation do not prevent a jury from performing its function of assessing the amount of just compensation. Perhaps the most important distinction between condemnation proceedings and other civil proceedings is the requirement of a jury view:

> The jury view (i.e., the jury going to view the property that is the subject of the condemnation action) is an impressive part of the evidence in the case. The jurors will have the opportunity during the view to see things for themselves. They can judge the neighborhood, the condition of the premises, and other aspects of the property that will be described in photographs or in the testimony of witnesses. It is perhaps the most vivid demonstrative evidence in a condemnation case.

7 Nichols' The Law of Eminent Domain § G8.10[4] (rev.3d. ed. 2006). In Maryland, the jury view is required "unless the court accepts a written waiver filed by all parties or the condemnation is a "quick-take" proceeding." [10] Md. Rule 12–

---

10. We recognize that in the case *sub judice* the County employed a "quick-take" proceeding, and thus a jury view is not required. Md. Rule 12–207(c); *Bern–Shaw Ltd. P'ship v. Mayor & City Council,* 377 Md. 277, 298, 833 A.2d 502 (2003). Nevertheless, given the constitu-

207(c). The jury view is crucial to determining the amount of just compensation to be awarded to the property owner because, "[s]o far as value is concerned, the jury is free to arrive at its own evaluation, so long as there is evidence to support such an award." *Solko v. State Rds. Comm'n,* 82 Md.App. 137, 148, 570 A.2d 373 (1990).[11]

The jury in condemnation proceedings is also essential to evaluating expert testimony regarding the value of the property, especially when such testimony is subjected to the crucible of cross-examination. As stated by the Court of Appeals in *Bergeman v. State Rds. Comm'n,* 218 Md. 137, 146 A.2d 48 (1958):

> **It seems clear that the jury was not bound to accept the conclusions of any expert.** As we said in *State Roads Comm. of Md. v. Novosel,* 203 Md. 619, 625 [102 A.2d 563 (1954) ]: "The jury's function is to determine whether the emphasis sought to be given the facts in any of the testimony is correct, and they need not follow any witness' judgment as to the weight to be given to a particular factor in arriving at a valuation." ... We have also said that "**the opinion of [an expert] witness, and the grounds upon which it was formed, and the weight to be attached thereto, were matters for the consideration of the jury.**"

*Id.* at 142–44, 146 A.2d 48 (emphasis added) (citations omitted). *See also State Rds. Comm'n v. Adams,* 238 Md. 371, 385, 209 A.2d 247 (1965) ("The jury is not bound to accept *in*

---

tional right accorded to a landowner to have a jury decide just compensation, we believe that a jury view is required in a "quick-take" proceeding if the landowner so elects.

**11.** We disagree with the County's contention that *Solko v. State Rds. Comm'n,* 82 Md.App. 137, 570 A.2d 373 (1990) stands for the proposition that the Soleimanzadehs have the burden of producing evidence of the value of their property if they disagree with the County's evidence of value. In *Solko,* this Court held only that the State did not have the *burden to prove* value in a "quick-take" condemnation proceeding. *Id.* at 146–47, 149, 570 A.2d 373. Even if the Soleimanzadehs had the *burden of production* on the issue of value, they could satisfy such burden through a jury view of the subject property and cross-examination of the County's experts.

*toto* the opinion of any of the witnesses, either as to the aggregate amount of damages or as to the weight to be given a particular element or factor of damages.").

## Conclusion

Article III, § 40 of the Maryland Constitution grants to a landowner the right to have just compensation awarded by a jury in a condemnation proceeding under the power of eminent domain. This constitutional right was implemented first by legislative enactment and later by rules of procedure adopted by the Court of Appeals. Unlike Article 23 of the Declaration of Rights and its implementing Rule, Rule 2–325, which preserve the right to a jury trial on "issues of fact," Article III, § 40 of the Constitution and Rule 12–207(a) specify the tribunal, i.e. the jury, that will decide the just compensation to be awarded to a landowner. Although the rules of civil procedure apply to condemnation proceedings in general, we hold that the summary judgment rule, Rule 2–501, does not apply in such cases to the issue of just compensation, because a landowner cannot be deprived of the constitutional right to have a jury award just compensation. In the instant case, the trial court's grant of the County's motion for summary judgment had the effect of denying the Soleimanzadehs their constitutional right to an award of just compensation by a jury, and thus the court erred in so doing.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR A JURY TRIAL TO DETERMINE THE JUST COMPENSATION TO BE AWARDED TO APPELLANTS. MONTGOMERY COUNTY TO PAY COSTS.**